## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| FRANCIS M. GANISZEWSKI )<br>75 Korn Drive )<br>Peru, NY, 12972 )<br> )<br>        Plaintiff, )<br> )<br> ) | C.A. No. 1:25-cv-00570 |

FRANCIS M. GANISZEWSKI    )
75 Korn Drive             )
Peru, NY, 12972           )
                          )
            Plaintiff,    )
                          )
        v.                )        C.A. No. 1:25-cv-00570
                          )
PETER HEGSETH, in his official capacity as )
United States Secretary of Defense,        )
Department of Defense                      )
1000 Defense Pentagon                      )
Washington, D.C. 20301-1000                )
                                           )
and                                        )
                                           )
TERENCE G. EMMERT, in his official capacity as )
United States Secretary of the Navy (Acting), )
Department of the Navy                        )
101 Navy Pentagon                             )
Washington, D.C. 20310-0101                   )
                                              )
                                              )
            Defendants.                       )
_____)

**COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY RELIEF**

## INTRODUCTION

1.      This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, by Petty Officer Second Class Francis M. Ganiszewski ("Plaintiff" or "PO2 Ganiszewski") challenging the findings and disability rating provided by the Physical Disability Board of Review ("PDBR") that were approved by the United States Secretary of the Navy ("Secretary").

2.      The disability rating initially assigned to Plaintiff by the Navy (10%) upon his discharge in October 2007—and later confirmed by the Secretary in March 2022 after a recommendation from the PDBR—resulted in Plaintiff's medical separation from the Navy because he was "physically unfit" to serve. The Secretary's determination that Plaintiff's disability rating for his unfitting disability should be 10% was arbitrary, capricious, contrary to law, and unsupported by substantial evidence. As a result of the Secretary's incorrect decision, Plaintiff was denied a disability retirement under 10 U.S.C. § 1201.

3.      When the Navy determines that a service member has one or more disabilities that make the member unfit for continued military service, the service member is typically separated from service with either: (1) a lump-sum disability severance payment; or (2) disability retirement status. The combined disability rating assigned to the service member determines whether the service member is entitled to a lump-sum disability severance or disability retirement. Like other military branches, if the Navy assigns the service member a disability rating of 20% or less, the service member is entitled to a lump-sum disability severance payment; and if the Navy assigns the service member a disability rating of 30% or more, the service member is entitled to disability retirement status. The Navy is required to apply the disability rating criteria contained in the disability rating schedule of the U.S. Department of Veterans Affairs ("VA"), known as the VA Schedule for Rating Disabilities ("VASRD") (38 C.F.R. Part IV). Unlike service members who receive the lump-sum severance payment, a disability retiree is entitled to, among other things,

military health care (TRICARE) for the retiree, the retiree's spouse, and the retiree's minor children; access to military bases; and commissary privileges.

4.    On October 9, 2007, the Navy honorably discharged Plaintiff for unfitting Bipolar II Disorder with just a 10% disability rating assigned by the Navy's Physical Evaluation Board ("PEB"). In 2020, Plaintiff applied to the PDBR, a federal agency established in 2008 "to review and, where appropriate, correct unjustifiably low Department of Defense disability ratings awarded since 2001." 153 Cong. Rec. 20342 (2007).

5.    The PDBR merely rubber-stamped the PEB's rating of 10%. The Secretary's error in adopting the PDBR's analysis of Plaintiff's disability rating is evidenced by Plaintiff's January 8, 2008, VA rating decision and other evidence of record. While the Navy assigned Plaintiff a 10% disability rating for his Bipolar Disorder, the VA—less than ***three*** months later, and using the exact same rating standards and evidence—assigned Plaintiff a disability rating of 50%.

6.    Following the issuance of its decision in the Plaintiff's case, the PDBR ceased operations, effective October 1, 2024, and responsibility for all pending or future cases previously eligible for PDBR review was transferred "to the Secretary of the Military Department concerned for assignment to their respective Board of Correction for Military/Naval Records." Memorandum for Secretaries of the Military Departments, SUBJECT: Sunset of Physical Disability Board of Review, Jul. 9, 2024.

7.    As a matter of law, the PDBR was expressly required to consider a variance between a service-assigned disability rating and a VA-assigned disability rating—if, as here, the VA rating is awarded within 12 months of discharge (DoD Instruction, No. 6040.44, July 2, 2015). The PDBR failed to do so here, without explanation.

3

8.    Plaintiff suffered a legal wrong and was adversely affected because of that final agency action, and thus is entitled to judicial review under the APA. 5 U.S.C. § 702.  The APA authorizes this Court to set aside any agency decision that is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. 5 U.S.C. § 706(2)(A).  The Secretary's determination that Plaintiff merited a disability rating of 10% for his unfitting Bipolar Disorder is arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with law.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case raises federal questions under the laws governing the military and under the APA. 5 U.S.C. § 701 *et seq*.  Plaintiff also seeks relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

10.    Plaintiff seeks solely equitable relief in this action, namely, a finding that the PDBR's decision (and Secretary's affirmance) was arbitrary, capricious, unsupported by substantial evidence and contrary to law.

11.    Plaintiff previously sought relief for this issue before the PDBR, which was denied and confirmed by the Secretary.  Defendants' decision constitutes a final agency action for which there is no other adequate remedy in a court. *See* 5 U.S.C. § 704.

12.    Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) because the Defendants, reside in this judicial district.  Due to the disbandment of the PDBR, responsibility for this case has been transferred to the Secretary of the Navy.  Memorandum for Secretaries of the Military Departments, SUBJECT: Sunset of Physical Disability Board of Review, Jul. 9, 2024. Venue is also proper under 5 U.S.C. § 703 because this is a Court of competent jurisdiction.

13.     In accordance with 28 U.S.C. § 2501, this action is brought within six years of the Navy's final decision approving the recommendation of the PDBR denying relief, which occurred in March 2022.

## PARTIES

14.     Plaintiff Francis M. Ganiszewski served in the Navy from April 24, 2000, until October 9, 2007, when the Navy honorably discharged Plaintiff due to his Bipolar Disorder II. Plaintiff is a citizen of the United States and currently resides in Onchiota, New York. Throughout his service, Plaintiff was a member of a regular component of the armed forces entitled to basic pay, and therefore is an eligible member as required for disability retirement under the Career Compensation Act of 1949. 10 U.S.C. § 1201(a), (c).

15.     Defendant Peter Hegseth is the United States Secretary of Defense. He is the chief officer of the Department of Defense, and exercises authority, direction, and control over the Department of Defense. Upon information and belief, Defendant Hegseth performs a significant amount of his official duties within this judicial district at 1000 Defense Pentagon Washington, D.C. 20301-1000.

16.     Defendant Terence G. Emmert is the Acting United States Secretary of the Navy. He is the chief officer of the Department of the Navy, and exercises authority, direction, and control over the Navy including the Secretary of the Navy Council of Review Boards. Upon information and belief, Defendant Emmert performs a significant amount of his official duties within this judicial district at 101 Navy Pentagon, Washington, D.C. 20310-0101.

## LEGAL BACKGROUND

### Navy Discharge Procedures

17.     Chapter 61 of Title 10 of the United States Code establishes the process through which the Navy discharges disabled service members.  That chapter authorizes the PEB to discharge military personnel who are found to be unfit for continued military service due to physical or mental disability.

18.     The process begins with MEB. The MEB documents a service member's medical status and duty limitations and determines whether he or she meets the Navy's retention standards. The MEB evaluates the service member through a series of examinations.  If the MEB determines that the service member has one or more physical or mental conditions that fall below retention standards, it refers the service member to a PEB for a fitness determination.

19.     The PEB is responsible for determining a service member's unfitness for duty as a result of a physical or mental disability.  If the PEB finds a service member unfit for duty, then it must assign a percentage disability rating from 0% to 100%, in increments of 10%, for each condition.  The PEB's disability rating controls the nature of military benefits and services provided to the service member after discharge.  The PEB provides service members with the option of a formal hearing.

20.     When the PEB determines that a service member is unfit for military service, the service member could be (1) medically separated pursuant to 10 U.S.C. §1203; (2) permanently retired under 10 U.S.C. § 1201; or (3) placed on the temporary disability retired list ("TDRL") pursuant to 10 U.S.C. § 1202.  This decision is determined by the member's type of disability and the disability rating assigned by the Navy.  In assigning disability ratings, the Navy is required by statute to apply the VASRD (38 C.F.R. Part IV).  If the Navy assigns the service member a disability rating of 20% or less, a service member is medically separated—not medically retired—

and receives substantially fewer benefits and services than retirees.  If the Navy assigns the service member a disability rating of 30% or more, the service member must be either permanently retired, 10 U.S.C. § 1201, or placed on the TDRL (if the service member's disability is not determined to be of a permanent nature and stable). 10 U.S.C. § 1202.

21.    A service member placed on the TDRL is afforded certain procedural protections under 10 U.S.C. § 1210.  First, a service member on the TDRL must be given a physical examination at least once every 18 months to determine whether the disability for which he was temporarily retired has changed. 10 U.S.C. § 1210(a).  Second, a service member who remains on the TDRL for five years and still has the disability that put him on the TDRL is given a final determination that the disability is of a permanent nature and stable. 10 U.S.C. § 1210(b).  Finally, a service member may be removed from the TDRL only after (1) "a periodic examination" or "upon a final determination," 10 U.S.C. §§ 1210(c)-(f), and (2) a formal hearing before the PEB. 10 U.S.C. § 1214.

## Congress Seeks to Harmonize Navy and VA Disability Determinations

22.    During a 2007 joint congressional hearing, the Chairman of the Veterans' Disability Benefits Commission testified about discrepancies between disability ratings assigned by military departments and disability ratings assigned by the VA.  The Chairman cited the results of a study which concluded that compared to the VA, military departments frequently assigned lower disability ratings for the same service member and the same medical conditions, even while using the same disability rating criteria (the VASRD).

23.    In order to rectify these discrepancies, in January 2008, Congress enacted the Dignified Treatment of Wounded Warriors Act of 2008 ("DTWWA"), which required the Department of Defense ("DoD") to establish the PDBR to review the combined disability ratings

of medically separated veterans. 10 U.S.C. § 1554(a)(1). The PDBR was a joint service military review board responsible for reviewing the appeals of veterans who challenged their disability ratings and for making recommendations to military departments concerning those ratings. The PDBR was intended to address concerns that military departments were not accurately and consistently assigning disability ratings through the PEB and MEB processes, especially in comparison with the VA processes.

### Statutory and Regulatory Background

24.    Following enactment of the DTWWA, the DoD issued its Instruction 6040.44 (DoDI), which created the PDBR and its governing policies. DoDI 6040.44 lists the four types of recommendations the PDBR could make to the Navy: the PDBR could recommend 1) to not recharacterize the veteran's separation, 2) to re-characterize the veteran's separation, 3) to modify the disability rating, or 4) to issue a proposed new disability rating. The Navy would then issue a final order that could modify or accept the recommendations of the PDBR. Generally, when the Navy accepted the PDBR's recommendation—as the Navy did here—the PDBR's recommendation contained the only substantive discussion of the evidence and the law.

25.    When examining the evidence, the PDBR was required to apply the VASRD along with all applicable statutes in effect at the time of the contested separation. DoDI 6040.44, Enclosure 3, § 3e. Additionally, the PDBR was prohibited from considering provisions of DoD or military department regulations or guidelines (i.e., DoDI 1332.39), relied upon by the PEB, that are inconsistent with the VASRD in affect at the time of PEB adjudication.

26.    The PDBR was required to "obtain VA rating determinations issued on behalf of the former Service member," "[c]ompare any VA disability rating for the specifically military-unfitting condition(s) with the PEB combined disability rating, and consider any variance in its

deliberations and any impact on the final PEB combined disability rating, ***particularly if the VA rating was awarded within 12 months of the former Service member's separation.***"  DoDI 6040.44, Enclosure 3, § 4a(5)(a)-(b) (emphasis added).

### The VASRD Codes Relevant to PO2 Ganiszewski's Bipolar Disorder

27.     Pursuant to the VASRD, Mental Disorders, including bipolar disorder, are to be rated under the applicable diagnostic code in the Rating Schedule for the Mental Disorders.   38 C.F.R. § 4.130.  Where the mental disorder is Bipolar Disorder, the relevant diagnostic code is **9432** under 38 C.F.R. § 4.130.  Relevant here, are the rating criteria for **10**, **30** and **50** percent ratings pursuant to diagnostic code 9432.  A 10 percent disability evaluation is appropriate when there is disability manifested by occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication.  A 30 percent disability rating requires occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks due to symptoms such as depressed mood, anxiety, suspiciousness, panic attacks, chronic sleep impairment, mild memory loss.  A 50 percent disability evaluation is warranted when there is disability manifested by occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

28.     The list of symptoms under the rating criteria above are meant to be examples of symptoms that would warrant the rating, but are not meant to be exhaustive, and the rating agency need not find all or even some of the symptoms to award a specific rating.  Where the evidence shows that a veteran suffers symptoms or effects that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the diagnostic code, the appropriate equivalent rating will be assigned.

29.     In light of the volatility of certain behavioral health conditions—like Bipolar Disorder—the VASRD requires the rating agency to consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission.  38 C.F.R. § 4.126(a).  Moreover, the VASRD requires a rating agency to assign an evaluation based on ***all the evidence*** of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination.  38 C.F.R. § 4.126(a).

## **FACTUAL ALLEGATIONS**

### **PO2 Ganiszewski's Military Service**

30.     Plaintiff PO2 Francis M. "Frank" Ganiszewski served honorably in the United States Navy for over seven years, from April 24, 2000, to October 9, 2007.  While in the Navy, PO2 Ganiszewski served primarily in logistics as a surface warfare storekeeper, deploying to combat zones in support of the global war on terror.  As a result of his exemplary military service, PO2 Ganiszewski was awarded numerous ribbons and medals, including the Navy and Marine Achievement Medal, two Good Conduct Medals, the Global War on Terrorism Service Medal, the Global War on Terrorism Expeditionary Medal, a Sea Service Deployment Ribbon, a Battle E Ribbon, a Meritorious Unit Commendation, and the National Defense Service Medal.

31.    PO2 Ganiszewski's service performance consistently exceeded standards; indeed, his raters found his performance exceeded standards in *every category* for *every rating* period. During every rating period his senior raters identified PO2 Ganiszewski as a "must promote" and actually "frocked" him to the rank of Petty Officer Second Class—pushes reserved for the best young Sailors.    PO2 Ganiszewski's raters found that he consistently had "excellent military bearing" and was "physically fit and highly recommended for retention and further advancement." PO2 Ganiszewski was identified as "team oriented" with a "large knowledge base" and was widely considered "a well-organized and valued asset to…the Command."    Because PO2 Ganiszewski was an "effective team player who accepts and completes assigned tasks successfully" he was identified as a "promising Sailor with the potential to become an outstanding First Class Petty Officer."

## PO2 Ganiszewski's Medical History and Discharge

32.    The Navy did not live up to its side of the bargain.    During the first several years of Operation Iraqi Freedom ("OIF") and Operation Enduring Freedom ("OEF"), the U.S. Navy struggled with widespread occurrences of servicemembers hazing and abusing their fellow service members.    *See, e.g.* Krantz, R. *U.S. Navy Sailors Say They Were Hazed, Abused* (Sept. 23, 2009 NPR) (describing "rampant misconduct" including physical, psychological, and sexual abuse of sailors by fellow sailors, such as "hog-tying," compelling simulated sexual acts on camera, and beatings in 2005).    Many of these instances led to mental illness, post-traumatic stress disorder ("PTSD"), and suicide.    *Id.*

33.    PO2 Ganiszewski was not immune to these experiences.    Throughout his career, PO2 Ganiszewski was subjected to repeated and continuous physical and mental abuse at the hands of his fellow sailors—and supervisors.    And when PO2 Ganiszewski reported this abuse through

proper channels, the young sailor was rebuffed and ignored time and again.  As his mental state deteriorated at the hands of the abuses from his comrades in arms, resulting in a diagnosis of Bipolar Disorder, so too did his physical state.

34.    PO2 Ganiszewski was diagnosed with claustrophobia in 2000 after his debilitating response to the confined interior of a submarine.  As a result, PO2 Ganiszewski was reassigned to surface fleet—***but this reassignment was not all the mental health clinic recommended.***  Indeed, upon the claustrophobia diagnosis, PO2 Ganiszewski's diagnosing physician, CDR (Dr.) C.J. Kowalsky, also recommended cognitive-behavioral therapy in addition to daily medication (Zoloft) for target phobic symptoms.  But PO2 Ganiszewski did not receive any mental health treatment or medication.

35.    As a result of the Navy's failure to properly treat his medical conditions, PO2 Ganiszewski progressed into depression and subsequently developed suicidal ideation with plans to cut his wrists with razor blades.  Upon finally receiving medical help—which included a diagnoses of adjustment disorder with depression—PO2 Ganiszewski was hospitalized.  Despite all this, PO2 Ganiszewski was returned to surface fleet duty.

36.    As noted earlier, PO2 Ganiszewski's surface fleet reassignment—to the USS *Anzio*—was fraught with physical, mental, and psychological abuse at the hands of his fellow sailors.  But this abuse was ***in addition*** to the all-to-familiar challenges of military deployments. In 2003, while underway on deployment in support of Operation Iraqi Freedom, PO2 Ganiszewski's wife informed him that she wanted a divorce upon his return.  The breakdown of his family life, coupled with the stress of a combat deployment, multiplied by the constant physical and mental abuse of his shipmates and superiors unavoidably led to significant mental distress. During his 2003 deployment, PO2 Ganiszewski began experiencing auditory and visual

hallucinations, which continued for years thereafter. These hallucinations manifested themselves as shadows of people, often speaking to him, greeting him, or saying his name. With no support structure either at home or on his ship, PO2 Ganiszewski did not disclose these hallucinations until subsequent mental health treatment received at NAS Fallon in 2007, almost five years later. PO2 Ganiszewski's mental illnesses continued and—since they were untreated—worsened. In 2005, following the completion of his tour aboard the USS *Anzio*—and following his divorce in 2004— PO2 Ganiszewski was assigned to shore duty at NAS Fallon in western Nevada. During his assignment there, PO2 Ganiszewski developed episodes of mania, wherein his thoughts raced, he was unable to sleep (often for days at a time), and he experienced feelings of grandiosity and indiscretion. Indeed, PO2 Ganiszewski would sometimes work at a frenetic pace, for hours on end, and then lash out at his coworkers for no reason. These manic episodes—prototypical symptoms of bipolar disorder—increased in frequency, eventually occurring monthly, and lasting three days at a time.

37.    Finally, as a result of concern expressed by PO2 Ganiszewski's (now non-abusive) coworkers, he sought medical help. PO2 Ganiszewski was almost immediately diagnosed with Bipolar Disorder II, and was admitted to the locked inpatient psychiatric ward at NAS Fallon, in addition to being placed on Depakote ER and Risperdal (bipolar and seizure medications). On April 20, 2007, the Medical Board evaluated PO2 Ganiszewski's Bipolar Disorder. In its report, the Medical Board found that he experienced symptoms of difficulty with sleep, feelings of guilt, times of anhedonia, difficulty with concentration, and auditory hallucinations. The Medical Board further noted the cyclical nature and increasing severity of PO2 Ganiszewski's bipolar disorder observing that over the last two years he has experienced various episodes of "hypomania, with periods of racing thoughts, little need of sleep, feelings of grandiosity, and indiscretion."

38.    Also, as part of his Medical Board, PO2 Ganiszewski's commander filled out the required non-medical assessment and indicated that PO2 Ganiszewski's bipolar disorder severely limited his productivity and effectiveness.

39.    PO2 Ganiszewski's case was reviewed by the PEB on June 25, 2007.  At that time, PO2 Ganiszewski was still taking Depakote for his Bipolar Disorder.  Following the findings of the Medical Board, the PEB found that PO2 Ganiszewski's Bipolar Disorder rendered him "unfit for military duty as he has a condition that causes him to be a ***serious liability*** with a ***high risk for destructive behavior*** that could be damaging to himself or those around him…."  The PEB further determined that PO2 Ganiszewski's "psychiatric condition manifests itself with ***moderate interference*** with social and civilian adaptability."

40.    The PEB, upon finding PO2 Ganiszewski's Bipolar Disorder unfitting, assigned a 10 percent disability rating pursuant to  38 C.F.R. § 4.130, Diagnostic Code 9432.   No explanation was given for why a 10 percent rating was selected.

41.    Notably, the 10 percent evaluation even directly conflicted with the "moderate" impairment found by the MEB under the now-rescinded and unlawful Department of Defense Instruction ("DoDI") 1332.39, *Application of the Veterans Administration Schedule for Rating Disabilities*, (Nov. 14, 1996).[1]  Thus, the 10 percent rating was contrary to law and unsubstantiated by the record.

### VA Compensation and Pension Examinations

42.     Just prior to PO2 Ganiszewski's discharge from the military on October 9, 2007, PO2 Ganiszewski underwent a VA examination on July 25, 2007, which resulted in a 50 percent disability rating for Bipolar Disorder under 38 C.F.R. § 4.130, Diagnostic Code 9432, effective

---

[1] The Department of Defense rescinded DoDI 1332.39 on October 14, 2008.

from discharge.  In addition to the Plaintiff's VA examination, the VA based its 50 percent disability rating on PO2 Ganiszewski's prior service treatment records from March 31, 2000, through April 20, 2007.   No post-discharge evidence was reviewed or considered.

43.     The VA awarded PO2 Ganiszewski vocational rehabilitation benefits for his Bipolar Disorder.  Vocational rehabilitation benefits can only be awarded for a rating of 20 percent or more.

44.     Based on its review of wholly in-service evidence of disability, the VA assigned a disability rating of 50% for PO2 Ganiszewski's Bipolar Disorder due to the "VA Psychiatric findings of a flat affect, appearing insecure and uneasy, mildly to moderately anxious, along with reported symptoms of restlessness, hyperactivity, angry outbursts, depressive episodes characterized by depressed mood, anhedonia, reduced energy and reduced sleep, that alternated with manic episodes of grandiosity, talkativeness and irritability coupled with reported treatment with medications and outpatient treatment."

45.     In 2009, PO2 Ganiszewski's 50 percent VA disability rating for his Bipolar Disorder was continued.

## LEGAL BACKGROUND

### The PDBR Decision

46.     In 2020, PO2 Ganiszewski submitted an application to the PDBR seeking review of the PEB's decision to award a 10% permanent disability rating for his unfitting Bipolar Disorder.  In applying to the PDBR, PO2 Ganiszewski specifically consented to the release of his VA records to the PDBR.

47.     In its decision, the PDBR noted the PEB rating decision of 10% but ignored all of the subsequent VA rating decisions including the January 2008 decision that was based purely on in-service evidence and issued within 12 months of his discharge from the Navy.  The PDBR's

decision also failed to grapple with contradictory evidence including, but not limited to: the veteran's award of vocational rehabilitation in August 2008; that the VA maintained the 50 percent disability rating for PO2 Ganiszewski's Bipolar Disorder in 2009 despite the PDBR's suggestion that Plaintiff's Bipolar Disorder was better managed post-discharge; and that PO2 Ganiszewski's Bipolar Disorder could not possibly be managed by medication, as required for a 10 percent rating under diagnostic code 9432, since by its own admission, the Plaintiff only "occasionally took his MH medication."

48.    In determining that PO2 Ganiszewski's Bipolar Disorder did not satisfy the requirements for a higher rating, the PDBR also arbitrarily and capriciously disregarded uncontested facts, including that PO2 Ganiszewski's "July 2007 C&P MH examination indicated a serious impairment"; that the April 2007 Medical Board report narrative summary noted that PO2 Ganiszewski "has a condition that causes him to be a ***serious liability*** with a ***high risk for destructive behavior that could be damaging to himself or those around him***…."; and that over the last two years of his service, PO2 Ganiszewski "developed episodes of hypomania, with periods of racing thoughts, little need of sleep, feelings of grandiosity, and indiscretion."

49.    The PDBR's decision to uphold the 10 percent rating for Plaintiff's Bipolar Disorder was furthermore arbitrary, capricious, unsupported by substantial evidence and contrary to law in that it required that psychosis, domestic violence, or suicidal ideation be present in the six months prior to discharge for a 50 percent evaluation.  But there is no such requirement. Psychosis, domestic violence or recent suicidal ideation is not required for a 50 percent disability rating, and even if it were, the presence of these symptoms would not be ***required*** since the rating agency need not find all or even some of the symptoms to award a specific rating.

50.     Moreover, the PDBR—unlike the VA—erred by failing to explicitly consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and PO2 Ganiszewski's capacity for adjustment during periods of remission.  38 C.F.R. § 4.126(a). Instead—in violation of 38 C.F.R. § 4.126(a)—the PDBR used specific and cherry-picked moments from a single examination (like his December 2007 appointment) to uphold the PEB's 10 percent disability rating.

51.     The PDBR further acted arbitrarily, capriciously, against the great weight of evidence when and contrary to law when it looked at ***post-discharge*** evidence of Plaintiff's mental health condition while simultaneously determining the Plaintiff's bipolar disorder was stable ***at discharge***.

52.     Finally, the PDBR acted arbitrarily, capriciously, against the great weight of evidence when and contrary to law when it found that 38 C.F.R. § 4.129—which requires a 50% disability rating when a mental health condition develops in service due to a highly stressful event—was not applicable to PO2 Ganiszewski's case despite his history of combat deployments and abuse at the hands of his comrades.

### How the PDBR *Should Have* Determined PO2 Ganiszewski's Disability Rating under Applicable Law

53.     Given the facts of PO2 Ganiszewski's case, the PDBR should have taken the following steps.

54.     The PDBR should have given special consideration to the VA's July 25, 2007, examination and January 27, 2008 Rating Decision establishing a 50% disability rating for Bipolar Disorder.  Under DoDI 6040.44, the PDBR (through the service branches) is required to obtain VA rating decisions issued to PO2 Ganiszewski. DoDI 6040.44 requires the PDBR to

meaningfully "compare any VA disability rating for the specifically military unfitting condition(s) with the PEB combined disability rating and consider any variance in its deliberations and any impact on the final PEB combined disability rating, particularly if the VA rating was award within twelve (12) months of the Service member's separation." When "there is a question as to which of the two evaluations shall be applied," the PDBR must assign the higher rating "if the disability picture more nearly approximates the criteria required for that rating." 38 C.F.R. § 4.7. Moreover, the PDBR must resolve any reasonable doubt in favor of the former servicemember. Id. at §§ 3.102, 4.3.

55.    The VA issued initial Ratings Decisions in January 2008. Adhering to DoDI 6040.44, the January 2008 decision (which assigned PO2 Ganiszewski a 50% rating) should have been given special consideration by the PDBR because it came within twelve months of PO2 Ganiszewski's October 7, 2007 separation date and it was a more accurate reflection of the severity of PO2 Ganiszewski's Bipolar Disorder at discharge and thereafter.

56.    Furthermore, the PDBR should have focused on the overall occupational and social impairment faced by the veteran at discharge rather on the absence of individual symptoms from the rating criteria, because 38 C.F.R. § 4.130 does not require the presence of all or most of the enumerated symptoms for a rating to be applicable. Had the PDBR actually focused on PO2 Ganiszewski's occupational and social impairment at discharge and thereafter, rather than on specific symptoms listed in the rating criteria for a particular disability rating, it would have found—especially when applying reasonable doubt and the higher of two evaluations—that Plaintiff's symptoms caused occupational and social impairment with reduced reliability and productivity meriting higher than a 10% rating.

18

57.     Moreover, the PDBR, like the VA should have considered the inherently volatile nature of Bipolar Disorder by holistically assessing the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission.  38 C.F.R. § 4.126(a).  Had the PDBR considered such holistic, volatile, and long-term factors, it would have found that—even if occasionally faring well—the overall pattern of Plaintiff's bipolar disorder broadly reflected occupational and social impairment with reduced reliability and productivity.

58.     Finally, at a minimum, even if there was evidence possibly supporting a 10 percent rating, 38 C.F.R. § 4.3 and 4.7. required the PDBR to assign the higher rating.

## THE NAVY'S FINAL DECISION

59.     On March 7, 2022, the Secretary of the Navy Council of Review Boards issued its final decision that accepted the recommendations of the PDBR Decision.  In a letter to PO2 Ganiszewski, the Navy stated that it reviewed his application and "accepted the PDBR's recommendation of no change to your characterization of separation or disability rating assigned" and that this determination "is final and not subject to appeal or review."  The Navy's decision constitutes a final agency action on PO2 Ganiszewski's case and left him with no other recourse within the DoD.  For all of the reasons noted above with respect to the PDBR Decision, the Navy's acceptance of the recommendations of that decision was unsupported by substantial evidence, contrary to law, and arbitrary and capricious.

## COUNT I

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

60.     Plaintiff Francis M. Ganiszewski hereby incorporates by reference the allegations set forth in paragraphs 1-59 above, as if fully set forth herein.

61.     The Secretary's March 7, 2022, decision to adopt the PDBR's recommendation and refuse to change Plaintiff's disability status is subject to judicial review as a final "agency action" under the APA. 5 U.S.C. §§ 551(13), 701, 704.  Plaintiff's appeal to the PDBR was the final administrative option available to Plaintiff for review of his disability rating.  Plaintiff has no further administrative remedies for challenging his erroneous disability rating.  Plaintiff has made every good faith attempt to resolve this conflict within the Department of Defense, and has exhausted all possible administrative remedies.

62.     Under the APA, 5 U.S.C. § 706(2)(A), this Court is required to hold unlawful and set aside a final agency action that is arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with law.  The Secretary adopted a 10% disability rating for Plaintiff's Bipolar Disorder.  That decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law, as it failed to recognize significant record evidence that Plaintiff's injuries merited higher disability ratings in accordance with 10 U.S.C. § 1216a.  As such, the Secretary's decision to assign Plaintiff a 10% disability rating is unlawful under the APA, 5 U.S.C. § 706(2)(A), and must be set aside.

63.     The PDBR acted arbitrarily and capriciously by affirming the flawed decision of the PEB without explaining why the VA's January 2008 Rating Decision and other evidence did not support a higher rating.  In denying a disability rating higher than 10% for PO2 Ganiszewski's Bipolar Disorder, the PDBR failed to properly apply 38 C.F.R. §§ 4.3 and 4.7.  Even if the PDBR considered their decision a close call—which is was not for the reasons set forth herein—such a decision should be resolved in PO2 Ganiszewski's favor because when there's reasonable doubt regarding the degree of disability, any doubt must be resolved in favor of the member.

64.    The PDBR acted arbitrarily and capriciously by not correctly applying the other guidelines of the VASRD including 38 C.F.R. §§ 4.126 and 4.130.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Francis M. Ganiszewski, respectfully requests the Court to:

A.  Find that the Secretary's decision of March 7, 2022, was arbitrary and capricious, unsupported by substantial evidence, and contrary to law, and set aside this decision under 5 U.S.C. § 706(2)(A);

B.  Order the Secretary to remand Plaintiff's 2020 PDBR application to the Board for Correction of Naval Records for reconsideration so as to properly consider the record facts and law as set forth herein; and

C.  Award interest, costs, and attorneys' fees as prescribed in 28 U.S.C. § 2412(d) and (f); and

D.  Order such other and further relief the Court may deem just and proper.

Dated: February 25, 2025

Respectfully submitted,


By: /s/ Joseph J. Cavanaugh
Joseph J. Cavanaugh (DC Bar #1616917)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth St. NW
Washington, D.C. 20004
Telephone: (202) 637-2458
Fax: (202) 637-5910
joe.cavanaugh@hoganlovells.com

Thomas B. Hunt (*pro hac vice* forthcoming)
HOGAN LOVELLS US LLP

8350 Broad Street, 17th Floor
Tysons, Virginia 22102
Telephone: (703) 610-6100
Fax: (703) 610-6200
thomas.hunt@hoganlovells.com


Rochelle Bobroff (DC Bar No. 420892)
Esther Leibfarth (DC Bar No. 1016515)
rochelle@nvlsp.org
esther@nvlsp.org
NATIONAL VETERANS LEGAL
SERVICES PROGRAM
1100 Wilson Blvd., Suite 900
Arlington, VA 22209
Tel: (202) 621-5681
Fax: (202) 328-0063

*Attorneys for Plaintiff Francis M.
Ganiszewski*